Nov. 1813.

## Isaac E. Judson *against* Thomas Sturges;

### IN ERROR.

*A.*, as the agent of *B.*, both being citizens of the *United States*, undertook to transport certain property from *St. Stephens*, in the province of *Nova-Scotia*, to *Antigua*, one of the *British West-India* islands, in an *English* bottom, (the *Sarah*,) chartered for that voyage only, in the name of a *British* subject. The vessel and cargo arrived in safety at *Antigua*, but the laws then in force in that island prohibited the landing of the cargo; and the master of

THIS was an action of *account*, brought against the defendant for certain goods, wares and merchandize, delivered by the plaintiff to the defendant, at *St. Stephens*, in the province of *Nova-Scotia*, and by him received, and sold in the *West-Indies*, as the agent of the plaintiff.

The cause was tried before the Superior Court : And auditors having been appointed, they awarded a balance of 163 dollars, 5 cents, in favour of the defendant.

The plaintiff made a remonstrance against the acceptance of the auditors' report, wherein it was averred, that it was proved and admitted, on the trial before the auditors, that the plaintiff delivered the property described in the declaration to the defendant, at *St. Stephens*, in the province of *Nova-Scotia*, within the dominions of the king of *Great-Britain ;* and that the same was shipped, by the defendant, in an *English* vessel, chartered for that voyage only, in the name of *Eliada Prescott* of *St. Stephens*, a subject of the king of *Great-Britain*, to the island of *Antigua*, one of the *British West-India* islands, to sell and dispose of for the benefit of the plaintiff, and to account with him for the avails thereof : And that it was admitted, that the defendant arrived with the property, in safety, at the place of destination.

And it was averred, that the defendant, in his account

the *Sarah* refusing to carry the property further, *A.* purchased another vessel with a view to transport the property to the island of *Guadaloupe,* which was then subject to the *French* government. At this time, *England* and *France* were at war. On the passage to *Guadaloupe*, the vessel and cargo were captured and carried into *Dominico ;* and *A.* paid a large sum of money for the ransom thereof. *A.* received discretionary authority from *B.*, to sell and dispose of the property, as he should judge best for the interest of *B. ;* but he was not expressly authorised to purchase a vessel. In an action of account, brought by *B.* against *A.* for the avails of the property by him sold, the defendant, in his account, charged the plaintiff, among other items, with the money paid on the purchase of the vessel. It was held, that although the defendant had no express authority to purchase a vessel, yet, considering the discretionary power which he possessed, the nature of his agency, and the circumstances in which he was placed, the purchase was justifiable.

exhibited before the auditors, had charged the plaintiff with the sum of 331 dollars, 93 cents, as the proportion of the ransom paid for the restoration of the plaintiff's goods, and the schooner *Liberty,* shipped at *Antigua,* on board the schooner, which was captured and carried into *Dominico :* Also, the sum of 332 dollars, 46 cents, paid Capt. *Ayre,* for freight and demurrage on the plaintiff's goods shipped by the schooner *Sarah* from *St. Stephens :* Also, the sum of 143 dollars, 29 cents, paid *Belogere and Justlin,* being two thirds of the profits on the plaintiff's goods sold at *Guadaloupe,* as *per* contract made at *Antigua :* Also, 1035 dollars, 68 cents, as his proportion of loss on the capture, on the passage from *Guadaloupe* to *Antigua,* being the proceeds of goods sold in *Guadaloupe :* Also, 334 dollars, 8 cents, as his proportion of the purchase money of the schooner *Liberty,* purchased at *Antigua.*

It was also averred, that the defendant, in support of his account, offered evidence to prove, that when he received the property mentioned in the declaration, at *St. Stephens,* the plaintiff gave him discretionary authority to sell and dispose of the same, as he should judge best for his interest; that on his arrival at *Antigua,* he found, that the laws then in force in that island, prohibited the landing of the property, and that he, therefore, purchased the schooner *Liberty,* with a view to transport the plaintiff's property, together with other property which he received at *St. Stephens,* belonging to sundry mercantile houses in *Connecticut,* to the island of *Guadaloupe,* which was then subject to the *French* government, between which, and the government of *Great-Britain,* there then was, and for a long time before, had been, a state of open war; that on the passage to *Guadaloupe,* his vessel and cargo were captured, and that he was obliged to ransom the same, at the price of 1000 dollars; that he proceeded to *Guadaloupe,* where he sold the property; and that, on his return to *Antigua,* he was robbed of all the money and other property, the avails of the same.

It was admitted, that the defendant had no express authority to purchase a vessel, as above stated.

The plaintiff, before the auditors, objected to the admission of the evidence offered by the defendant, and to the allowance of his account, and particularly, to the charges relating to the purchase of the schooner *Liberty*, the money paid for the ransom of the vessel and cargo, and the loss by robbery, on the ground that the defendant had no right, pursuant to his instructions, to purchase a vessel, for the purpose of engaging in a new voyage, or to transport the property to any other place than that originally designed ; and also, on the ground that he had no right to hazard property in a voyage from *Antigua* to *Guadaloupe*, as the *English* and *French* were then at war : But the auditors overruled these objections, admitted the evidence, and allowed the defendant's account.

The defendant replied to the remonstrance, by denying the truth of the facts therein alleged ; upon which issue was joined to the court ; who found the following facts, *viz.* That the plaintiff's property was shipped in an *English* bottom, in the name of an *English* woman, from *St. Stephens*, to *Antigua ;* that the vessel on board of which it was shipped, was chartered for that voyage only ; that the master of the vessel, who carried the property to *Antigua*, refused to transport it to any other place ; that by the laws then in force at *Antigua*, the property could not be there landed, and that a transportation thereof, elsewhere, became necessary ; that under these circumstances, the defendant took advice as to the course, which he ought to pursue, and in pursuance thereof, purchased the schooner *Liberty*, at *Antigua*, in order to carry the property to a market, for which he paid about 500 dollars, and that he afterwards sold the vessel for the same sum ; that the defendant had discretionary, but no express authority to purchase a vessel ; that on his passage to *Guadaloupe*, he was captured and carried into *Dominico*, where he ransomed the vessel and cargo, proceeded to *Guadaloupe*, and there sold the plaintiff's property ; that the defendant, in his account, charged the plaintiff with his due proportion of the loss sustained by the capture and ransom of the vessel and cargo ; and also charged the owners of the

property with the amount paid for the price of the vessels, and credited them with the avails of the sale thereof; that all these charges were allowed by the auditors; and that it was decided by the auditors, that the plaintiff was liable for his proportion of the losses sustained by the last voyage.

These facts having been found to be true, the court adjudged them to be insufficient to set aside the report of auditors; and the report having been accepted, judgment was rendered thereon, accordingly. To reverse this judgment, the present writ of error was brought.

*N. Smith* and *B. Bronson*, for the plaintiff in error. They contended,

1. That the finding of the court is defective. *Smith* v. *Bellamy*, 1 *Root's Rep.* 200. *Gates* v. *Nobles*, 1 *Root's Rep.* 344. *Cook* v. *Atwater*, 1 *Root's Rep.* 435. *Woodworth* v. *Clark*, 1 *Root's Rep.* 342.

2. That the defendant exceeded his authority. *Johnson* v. *Shippen*, 2 *Ld. Raym.* 983, 984. *Abbott*, 4. 8. *in notis*. *Reid* v. *Darby*, 10 *East*, 143.

*Daggett*, contra.

BRAINARD, J. The principal ground of error relied upon in this case, is, that the court, after finding certain facts alleged in the remonstrance, to be true, adjudged them to be insufficient to set aside the report of the auditors. The objection relates, chiefly, to the fact that the defendant purchased a vessel at *Antigua*, for the purpose of transporting the plaintiff's property from thence to *Guadaloupe*, a proportion of the price of which purchase, was charged in his account against the plaintiff, and allowed by the auditors. This act, it is claimed, was beyond the scope of the defendant's authority; no express authority having been given to him, for this purpose.

The court find, that, by law, the property could not be landed at *Antigua*, and that a transportation to some other place, became necessary; that the vessel in which it was

Nov. 1813.

JUDSON
v.
STURGES.

sent, was chartered for that voyage only, and that the captain refused to carry it to any other place ; that the defendant took advice, and in pursuance of such advice, as freights were very high, concluded to purchase the schooner *Liberty*, to carry the property to a market ; and they infer, that although the defendant had no express authority, yet he had discretionary orders for that purpose, resulting from the nature of his agency, and the peculiar circumstances in which he was placed : And on this point, the real question, is, was this inference correct ?

It is a general and undeniable position, that an agent must act within the scope of his authority ; but in many instances, this scope will be extended, or varied, according to circumstances. To say, that a master, or super-cargo, could purchase a vessel, abroad, when he pleased, and bind the owners thereby, is what no man will pretend : And to say, that he never can do this, in any instance, and in any emergency, would be equally absurd.

It is a settled principle of law, that the master of a vessel, as agent for the owners, can bind them for necessary supplies furnished the vessel. The supplies must, indeed, be necessary.

Suppose the master of a vessel bound to *Batavia*, loses his vessel at the cape of *Good-Hope*, but saves his cargo ; and that another vessel cannot be taken up on freight or charter ; may he not, under such circumstances, make a contract for the purchase of a vessel, which shall be binding on the owners ? When an agent is sent to a particular place with property to dispose of, and the means of conveyance is lost or destroyed, before his arrival at the place of destination, I know of no other course for him to pursue, but to hire or purchase other means, and to proceed. If the right of an agent to hire, or purchase, depend upon circumstances, the principle may as well be extended to the purchase of a vessel as of a wagon.

In the present case, the defendant had the charge of the property ; it became necessary that he should convey it to a place different from the place of its original destination ; the

vessel in which it was shipped, wholly failed him; it became necessary that he should either, freight, charter or purchase another. I cannot say, that he acted without the scope of his authority, in making the purchase.

I think, therefore, that in the judgment complained of, there is nothing erroneous.

The other Judges, severally, concurred in this opinion, except *Smith*, J., who being related, by affinity, to one of the parties, did not judge.

Judgment affirmed.