JOHNSON and others *vs.* THE NEW YORK CENTRAL RAIL
ROAD COMPANY.

Forwarders and warehousemen are, like other agents, bound by the directions
of their principals. The directions constitute a part of their authority,
and operate as a limit upon it.

Any unnecessary deviation or departure from the instructions is at the peril
of the agent, and renders him liable for any loss resulting from it.

But a deviation from the course marked out by the principal, which is render-
ed necessary by the circumstances of the case, which were not foreseen by
the principal, is justifiable, if the agent exercises the care and skill which
the character of his agency calls for; unless the instructions amount, in
substance, to a prohibition of the act in any other than the prescribed method.

The plaintiffs shipped, at Little Falls, on the defendants' cars, certain goods
consigned to a person in New York, with directions to the defendants to
forward from Albany by the " People's Line" of steamboats. On the arri-
val of the cars at Albany the People's Line refused to take the freight.
The navigation of the Hudson river being about closing, the defendants
shipped the goods by the Eckford line of tow boats, a responsible line and
in good reputation, which was the usual mode of conveying freight, of that
kind. The property being lost on its passage from Albany to New York,
by the perils of navigation; *it was held* that the defendants, in consequence
of the refusal of the People's Line to carry the freight, were in possession
of it as forwarders without any directions as to the route or means of con-
veyance, and were therefore bound to exercise their discretion, and select
the best that presented; that the established usage and course of business
became the rule of duty governing them; and that having forwarded the
goods by the customary method, they were not liable for the loss.

A CTION to recover the value of a quantity of tow, lost on
its passage from Albany to New York by some of the
perils of navigation. The cause was tried before Judge PRATT,
at the Herkimer circuit, without a jury. On the trial it ap-
peared that the bales and sacks of tow were put in the de-
fendants' cars at Little Falls, consigned to E. Ludlow, jr.,
New York, with directions to the defendants to forward from
Albany by the People's Line of steamboats. On the arrival
of the train of cars at Albany, that line of steamboats refused to
take the freight, upon the ground that they could not take it
without violating an act of congress. The navigation of the
Hudson river was about closing, and the defendants shipped
the property by the Eckford line of tow boats, a responsible

Johnson *v.* New York Central Rail Road Co.

line and in good reputation, which was the usual mode of conveyance of freight of this kind. The judge at the circuit gave judgment for the plaintiffs, for the value of the freight, with interest, and the defendants appealed from that judgment.

*C. B. Cochrane*, for the appellants.

*G. A. Hardin*, for the respondents.

*By the Court*, W. F. ALLEN, J. There is no dispute as to the relations which the parties occupied towards each other, in respect to the lost property. They agree that the property was delivered to the defendants at Little Falls, to be by them carried and conveyed to Albany and to be by them forwarded thence to New York, with directions to forward it by a particular line of steamboats. It is conceded that the liability of the defendants as carriers ceased with the arrival of the goods at Albany, and that from that time they occupied a different relation, and were charged with different duties and responsibilities. The defendants then became mere warehousemen and forwarders, and liable only for a breach of any duty growing out of those relations. They were in the situation of one receiving goods to forward, having no concern in the means of transportation, or interest in the freight, and were therefore mere warehousemen and agents of the plaintiffs. (*Story on Bailments*, § 502.) It can make no difference in their liability whether they became possessed of the property at Albany by receiving it from their own cars, or by receiving it by some other channel. It is their possession for a specific purpose, which determines their character and furnishes the rule of their liability. They were responsible only for ordinary care and skill and diligence. (*Story on Bailments*, §§ 442, 455. 1 *Parsons on Contracts*, 617. *Roberts* v. *Turner*, 12 *John.* 232. *Platt* v. *Hibbard*, 7 *Cowen*, 497.) In the absence of any specific directions as to the mode or route of conveyance, the duty of the defendants would have been well discharged

by forwarding the goods in the accustomed and usual manner, according to the course of trade, by a responsible and reputable individual or association. (*Brown* v. *Denison,* 2 *Wend.* 593. *Ackley* v. *Kellogg,* 8 *Cowen,* 223. *Van Santvoord* v. *St. John,* 6 *Hill,* 157.) Forwarders and warehousemen are, however, like other agents, bound by the directions of their principals. The directions constitute a part of their authority, and operate as a limit upon it. (*Story on Agency,* § 192. *Dunlap's Paley,* 3, *n. A.*) Any unnecessary deviation or departure from the instructions is at the peril of the agent, and renders him liable for any loss resulting from it. He becomes the insurer of the goods of his principal if, without authority or contrary to instructions, he causes them to be shipped or forwarded to their place of destination by a route or means of conveyance of his own choosing. (*Ackley* v. *Kellogg, supra.*) But a deviation from the course marked out by the principal which is rendered necessary by the circumcumstances of the case, which were not foreseen by the principal, is justifiable, if the agent exercises the care and skill which the character of his agency calls for. He may, if it becomes impossible to execute his agency in the precise manner directed, adopt the ordinary and usual method for accomplishing the same purpose; and if he does so with ordinary care, skill and diligence, he will not be responsible for the consequences, but his acts will be the acts of his principal; unless, indeed, the instructions amount in substance to a prohibition of the act in any other than the prescribed method. (*Forrester* v. *Boardman,* 1 *Story's Rep.* 51. *Judson* v. *Sturgis,* 5 *Day,* 556. *Story on Agency,* §§ 193, 194.) This would be so, especially in cases where the departure from instructions was circumstantial merely, and not substantial. All that the law requires is a substantial compliance with the orders of the principal, (*Parkhill* v. *Imlay,* 15 *Wend.* 431;) and a deviation from the appropriate course will not vitiate his act if it be immaterial, or circumstantial only, and does not in substance exceed his right and duty. (*Story on Agency,* § 85.)

Johnson *v.* New York Central Rail Road Co.

1st. There is no evidence, and no circumstance from which it can be inferred, that the intention of the plaintiff was that the goods should be sent from Albany to New York only by the "People's Line," and that if they could not be forwarded by that line they were to be detained at Albany, and not sent forward. It was not so expressed in the direction, and no provision was made by the plaintiff for the goods at Albany, in that contingency. In the margin or at the foot of the freight way-bill from Little Falls to Albany, not making a part of the way-bill, or the direction of the goods, are the words " via People's Line," designed only as a memorandum by way of direction to the rail road servants at Albany; and this is the only evidence in the case of any direction being given by the consignors.

2d. The substantial thing to be accomplished was the sending of the goods forward to New York. The particular boat or vessel by which they should be forwarded was merely circumstantial; and if the directions in that respect could not be obeyed, the substantial thing to be done could be accomplished, and it devolved upon the agent, in the exercise of ordinary diligence, to see that it was done. And had the defendants omitted to forward the goods in the usual manner and according to the course of trade, and detained them in their warehouse at Albany and harm had come to them there, or the plaintiffs had sustained damages by the delay, they would have been liable in damages. The established usage and course of business became the rule of duty binding upon the agent in order to carry out the substantial end and object of the agency, and evidence of this uniform usage was competent, and was controlling in the case. (*Van Santvoord* v. *St. John, supra. Hinton* v. *Locke,* 5 *Hill,* 437.)

3d. It became impossible to comply with the directions of the principal, without the fault of the agent, and it was a case, therefore, for a departure from those directions; and within all the cases it is only an *unnecessary* departure that renders an agent liable, or avoids his acts.

4th. The defendants really, as the result of the refusal, in consequence of inability of the " People's Line" to carry the freight, were in the possession of it as forwarders without any directions as to the route or means of conveyance, and therefore bound to exercise their discretion, and select the best that presented. The People's Line could not take it; but this was not known either to the plaintiffs or defendants at the time the direction was given, and it was as if no direction had been given. It was as if there had been no " People's Line," or their means of transportation had been destroyed between the giving of the directions and the arrival of the goods at Albany. The direction was given in good faith, but was impossible of execution, and what is the innocent forwarding merchant to do ? He has to adopt a course without the aid of the property owners. They have intimated, by their consignment, a desire that the property shall be sent to New York, and the presumption is that the desire is that it shall be forwarded without delay or the expense and risk of intermediate storage. I think the duty was obvious to carry out, as near as might be, the plainly declared intentions of the principal. There was no time to be lost; the boat on which the freight was shipped was the last tow that went down the river, in the fall of 1854. A delay for instructions would have lost the opportunity. The freight by the river was 6 cents per hundred pounds; by rail road the charge would have been 25 cents per hundred pounds. The rule must be the same as to the duties and powers of the agent whether the owner and shipper of the goods resides within fifty or five hundred miles of the forwarding merchant, if he is not in fact present so as to be able to be counseled on the spot.

The judgment should be reversed and a new trial granted, costs to abide the event.

[ONEIDA GENERAL TERM, January 5, 1857. *Hubbard, Pratt, Bacon* and *W. F. Allen,* Justices.]